**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF TEXAS**

**HOUSTON DIVISION**

United States Courts
Southern District of Texas
**F I L E D**

DEC 1 2 2025

Nathan Ochsner, Clerk of Court

ERIK SALVADOR GARCIA,

Plaintiff,

v.

CITY OF PASADENA, TEXAS;

CHIEF JOSHUA BRUEGGER, individually and officially;

OFFICER JOSEPH M. LOCKMONDY (#4039), individually; JOHN

DOE OFFICERS (NUMBER UNKNOWN), individually,

Defendants.

Civil Action No. _____

**PLAINTIFF'S ORIGINAL COMPLAINT**

(42 U.S.C. §1983 – JURY TRIAL DEMANDED)

## I.  INTRODUCTION

1. This civil rights action arises from the selective enforcement of Pasadena laws.

2. Plaintiff was aggressively prosecuted for a minor traffic citation (E1637637) issued on August 15, 2023, while Pasadena officials repeatedly refused to enforce nuisance, setback, environmental, and safety ordinances that protect Plaintiff's home.

3. This disparity constitutes unequal protection, class-of-one discrimination, selective enforcement, arbitrary police action and a municipal Monell violation for systemic non-enforcement.

4. "This §1983 action is related to and arises out of State of Texas v. Garcia, 4:25-cv05371."

5. Legal Pleading Standard

Plaintiff pleads this Complaint in accordance with Rule 8(a)(2) of the Federal Rules of Civil Procedure, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."

To the extent Defendants later seek dismissal under Rule 12(b)(6), Plaintiff states that this Complaint provides more than sufficient factual detail to state plausible claims for relief under Bell Atlantic v. Twombly and Ashcroft v. Iqbal, because it identifies specific dates, actors, municipal practices, and constitutional violations supporting each cause of action.

Standard under Rule 8 and Rule 12(b)(6).

Federal Rule of Civil Procedure 8 does not require detailed factual allegations, but it does require more than a bare, "the-defendant-harmed-me" accusation. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To withstand a Rule 12(b)(6) motion to dismiss, a complaint must give the plaintiff's grounds for entitlement to relief, including factual allegations that, taken as true, raise the right to relief above a speculative level. Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007) (citing Twombly, 550 U.S. at 555). A claim is plausible on its face Twombly, 550 U.S. at 570 when the pleaded facts allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged, not just a sheer possibility of unlawful action. Iqbal, 556 U.S. at 678. Plausibility "is not akin to a probability requirement," but it does demand "more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556–57).

In deciding a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. Walker v. Beaumont Indep. Sch. Dist., 938 F.3d 724, 735 (5th Cir. 2019) (quoting Campbell v. Wells Fargo Bank, N.A., 781 F.2d 440, 442 (5th Cir. 1986)). However, the Court does not accept as true mere legal conclusions, unwarranted inferences, or conclusory allegations. Vouchides v. Hous. Cmty. Coll. Sys., 2011 WL 4592057, at *5 (S.D. Tex. Sept. 30, 2011) (citing Gentilello v. Rege, 627 F.3d 540, 544 (5th Cir. 2010)). Generally, review is limited to the complaint and its attachments. Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp., 748 F.3d 631, 635 (5th Cir. 2014).

## II. JURISDICTION AND VENUE

6. "This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction under 28 U.S.C. § 1367. Venue is proper under 28 U.S.C. § 1391(b). The underlying action was previously removed to this Court pursuant to 28 U.S.C. §§ 1441 and 1446."

## III. PARTIES

7. Plaintiff ERIK SALVADOR GARCIA resides at 1404 Starkey Street, Pasadena, Texas 77503.

8. Defendant CITY OF PASADENA, TEXAS is a municipal corporation.

9. Defendant CHIEF JOSHUA BRUEGGER is the former Chief of Police and is sued in both his individual and official capacities.

10. Defendant OFFICER JOSEPH M. LOCKMONDY (#4039) is sued in his individual capacity.

11. Defendant FIRE MARSHAL ERIC VEGA is, upon information and belief, the Fire Marshal for the City of Pasadena and is sued in his individual and official capacities. Fire Marshal Vega was involved in safety, nuisance, and enforcement responses described in the complaint and participated in or ratified non-enforcement decisions that contributed to the ongoing violations and harms alleged herein.

12. Defendant OFFICER E. PAGE (Badge No. 3117) is, upon information and belief, a sworn officer of the Pasadena Police Department and is sued in his individual capacity. Officer Page responded to Plaintiff's complaints and interactions at issue and made statements acknowledging prior complaints, the City's response to those complaints, and the circumstances surrounding the alleged nuisance activity. Officer Page's statements provided confirmation of retaliatory or discriminatory treatment related to Plaintiff's protected complaints and requests for enforcement, regardless of whether Officer Page personally perceived the underlying noise at the time of his response.

13. Defendants JOHN DOE OFFICERS (NUMBER UNKNOWN) are Pasadena Police Department officers who responded to or failed to act on Plaintiff's numerous nuisance, noise, environmental, and safety complaints between 2023 and 2025.

Plaintiff contacted PPD extremely frequently—often daily—and therefore the exact number of officers cannot be determined without discovery. Their identities will be substituted once known.

## IV. FACTUAL ALLEGATIONS

### A. Traffic Stop and Citation (E1637637)

      11.      On August 15, 2023, Plaintiff was stopped by Officer Lockmondy at: 3000 Flamborough Dr, Pasadena, TX 77503, and issued Citation No. E1637637.

      12.      The City aggressively pursued this minor citation.

## B. ENVIRONMENTAL, NOISE, SAFETY, AND ORDINANCE VIOLATIONS

### 1. Location & Background

13. Plaintiff resides at 1404 Starkey Street, next to:

- 1402 Starkey Street — auto body shop ("the Shop"),
- 1402A Starkey Street — a tall residential building within 200 feet of the Shop,
- 1408 Starkey Street — location of amplified drumming ("the Drummer"),
- Gardner Field, 1405 Starkey St, Pasadena, TX 77503.

### 2. Auto Body Shop Disturbances (5 Years)

14. For approximately five (5) years, Plaintiff has suffered repeated disturbances from the Shop, including:

- sanding,
- grinding,
- fumes,
- dust,
- overspray,

- paint or chemical smell/odor

- mechanical noise,

- and emissions from a metal exhaust stack.

- Dogs barking

### 3. Violations of Mandatory 50-Foot Rule & 1.2× Stack-Height Rule

15. Although City employees often state that "Pasadena has no zoning," this is irrelevant to mandatory safety, environmental, and fire-code regulations, including:

### (A) Mandatory 50-Foot Setback Rule

"Spray booth, spray area, and preparation area stacks shall be located at least 50 feet from any residence, recreation area, church, school, child care facility, or medical or dental facility."

### (B) Mandatory Stack-Height Requirement

"If a building within 200 feet is taller than the auto body shop, the stack height must be 1.2 times the height of that taller building."

16. Plaintiff has measured, photographed, and observed that:

- The Shop performs sanding and spray-preparation within 50 feet of Plaintiff's home.

- It is also within 50 feet of 1402A Starkey Street, a residential home.

- The building at 1402A Starkey is significantly taller than the Shop, and stack

- My home at 1404 Starkey is also taller than the shop as well as the stack.

- The Shop's exhaust stack, although slightly above the roofline, is far below the 1.2× requirement.

County Investigators' Mishandling of Mandatory Permit Requirements (PBR / PI-7)

Reports obtained through open records show that Harris County Pollution Control Services (HCPCS) investigators Brooks, Everett, and Dailey acknowledged that the autobody shop did not have the required PI-7 / 106.124 Permit-by-Rule, which is mandatory for lawful spray-booth operation in Texas. Instead of issuing violations, these HCPCS investigators assisted the operator and advised him to "apply for it."

Despite the owner's documented admission that he lacked the required permit, no enforcement action was taken. The reports further show that these improper non-enforcement determinations were approved by HCPCS supervisory officials Roger Jones and Megan Rasefske.

This pattern of leniency, failure to enforce state-mandated permitting rules, and approval of non-action by supervisory staff demonstrates systemic investigative failure and arbitrary non-enforcement by Harris County Pollution Control. This pattern aligns with Plaintiff's broader allegations that government agencies routinely dismissed, misrouted, or minimized his complaints, contributing to the harm, nuisance conditions, and ongoing violations affecting his property.

**Conclusion: The Shop cannot ever be compliant.**

Because it violates:

- the 50-foot rule,
- the stack-height rule,
- and is physically incapable of meeting either requirement,

the City's refusal to act demonstrates deliberate non-enforcement.

**4. Temporary But Recurring Nuisance**

17. Although ongoing for five years, the nuisance fluctuates depending on workload, weather, and **complaints.**[1]

Under Texas law, this is a continuing nuisance, where each day constitutes a new violation.

## 5. Drumming Disturbance (3 Years)

18. For approximately three (3) years, amplified drumming, and dog barking at 1408 Starkey Street repeatedly disturbed Plaintiff.

19. On November 19, 2025, Plaintiff mailed a formal nuisance notice via Certified Mail #9589 0710 5270 1218 9467 98.

20. The letter was received on November 21, 2025, opened that night, and the drumming ceased entirely on November 22, 2025, proving the conduct was voluntary and avoidable.

20A. Although the drumming ceased on November 22, 2025, the nuisance did not permanently stop. On December 9, 2025, the drumming resumed during morning hours and again disturbed Plaintiff's sleep. Later that same day, Pasadena Police Officer E. Page (Badge No. 3117) informed Plaintiff that the neighbor at 1408 Starkey Street had told police that the drumming "started" in response to Plaintiff's family raising concerns about a large pecan tree on their property that was leaning toward Plaintiff's home. This statement indicated that at least some of the drumming activity was intentional and retaliatory, carried out in response to Plaintiff's legitimate safety concerns. Plaintiff also notes that tensions between the households increased after Plaintiff reported a separate sanitary issue to the City; however, only the pecan-tree motive was relayed by the officer. The retaliatory nature of the disturbance escalates the seriousness of the nuisance and shows the conduct was deliberate rather than accidental.

## 6. Excessive Noise From Gardner Field (1405 Starkey)

21. Gardner Field games are:

- seasonal,

- heavily scheduled,

---

[1] See City of Arlington v. Gallagher, 326 S.W.3d 714 (Tex. App. 2010) (cities must properly enforce nuisance and environmental regulations). See also Schneider Nat'l Carriers, Inc. v. Bates, 147 S.W.3d 264 (Tex. 2004) (continuing environmental interference constitutes nuisance).

- often daily during the season,

- louder with higher enrollment,

- extending into evening hours.


22. The 2024–2025 season produced unusually heavy disturbance, which City staff attributed to "more kids signing up this year than before." However, the increased enrollment does not justify concentrating all high-volume games at Gardner Field—directly beside Plaintiff's home—when multiple alternative fields were available. This admission demonstrates that the City was aware of the increased burden yet made no effort to mitigate its impact on Plaintiff.

23. Pasadena has many other baseball fields available, yet repeatedly chooses Gardner Field, directly beside Plaintiff's home.

24. Meanwhile, Kipper Mease Sports Complex, at 10700 Red Bluff Rd, Pasadena, TX 77507, is in the middle of a forest, has zero homes nearby, and was historically used for youth baseball.

25. The City's refusal to utilize alternative fields uniquely burdens Plaintiff.

26. The City's explanation confirms that it knowingly placed the additional noise burden on Plaintiff rather than distributing games across other Pasadena fields, demonstrating an uneven and arbitrary allocation of disturbance that uniquely harms Plaintiff.

27. Plaintiff and his family repeatedly requested that the City install or raise protective netting—knocked down on more than one occasion by severe weather. Plaintiff does not recall whether the most recent incident was caused by a storm or a hurricane, but the netting had also been damaged by an earlier storm months/years prior, requiring multiple complaints before the City ever addressed it. Despite these repeated requests, Pasadena took no corrective action for an extended period. As a result, players routinely used the front open area—outside the boundaries of the designated field—causing baseballs to fly into Plaintiff's property and creating a recurring safety hazard. On multiple occasions, children trespassed into Plaintiff's yard and neighboring yards to retrieve balls. One baseball even struck and shattered the windshield of a Plaintiff's family vehicle; the City acknowledged responsibility and paid for the damage. The City's delay continued until December 9, 2025, when Pasadena staff coincidentally arrived around 1:00 PM to begin repairing the netting at the same time Plaintiff was speaking with Officer E. Page. (Badge No. 3117) As of December 11, 2025, City workers were still performing repairs. Pasadena's refusal to timely install proper safety barriers or restrict play to the enclosed field demonstrates deliberate indifference to Plaintiff's safety and property rights.

27A. On multiple occasions, various Pasadena officials—including police officers, Fire Marshal Eric Vega, and other City employees—responded to Plaintiff's complaints with statements implying that the disturbances were Plaintiff's "fault for living here" and that he should not expect quiet or proper enforcement. In one specific instance, when Plaintiff called the City to report excessive noise from Gardner Field at 1405 Starkey Street, a City employee told Plaintiff it was "just a kids' game" and stated he was not going to try to stop it, before further implying that the problem was Plaintiff's "fault for living in front of a baseball park." Plaintiff cannot recall every individual name, but several officers and City personnel expressed this same dismissive attitude. These repeated remarks across departments reflect a uniform, biased, and retaliatory stance toward Plaintiff, and demonstrate Pasadena's deliberate refusal to enforce nuisance, safety, and noise regulations for Plaintiff while enforcing them for other residents. Such comments provide direct evidence of discriminatory intent, unequal treatment, and a municipal custom of selective non-enforcement.

## 7.    Repeated Reports to Pasadena Police & City Officials

28. Plaintiff repeatedly contacted:

- Pasadena Police Department ("PPD"),

- Pasadena Code Enforcement,

- environmental authorities (TCEQ), and Harris County Pollution Control Services and Department

- City personnel

- Fire Marshal

seeking enforcement of noise, zoning, and environmental violations.

29. Despite multiple calls, emails, letters, and complaints, PPD repeatedly refused to take action, often telling Plaintiff:

- "It's normal,"

---

42 U.S.C. §1983 – JURY TRIAL DEMANDED --- CITATION (E1637637)                9

- "Not loud enough,"

- "Nothing we can do," or

- simply leaving without investigating the pattern of complaints.

30. When officers arrived but the Drummer or the Shop happened to be momentarily quiet, officers took no action, failed to review past complaint history, and made no effort to prevent recurrence.

## C. December 9, 2025 Officer Statement Confirming Retaliatory Motive

30A. On December 9, 2025, at approximately 1:00 PM, Plaintiff spoke with Pasadena Police Officer E. Page (Badge No. 3117) after calling the Pasadena non-emergency line regarding renewed morning drumming disturbances.

30B. During this conversation, Officer Page informed Plaintiff that the neighbor at 1408 Starkey Street had previously told police that the drumming "started" because Plaintiff's family complained about a large pecan tree leaning toward Plaintiff's property that posed a safety risk.

Officer Page did not state that the drumming was related to Plaintiff's report of a sewer leak on the neighbor's property. However, Plaintiff reasonably believes that the sewer complaint may have further contributed to the neighbor's hostility and retaliatory conduct, as that report was made only after the sewer condition remained unaddressed for approximately two months.

30C. Officer Page's statement reveals that the drumming was intentional and retaliatory, conducted in response to Plaintiff's legitimate safety and sanitary complaints. Retaliatory noise and harassment constitute a malicious nuisance under Texas law.

30D. Despite this admission, Pasadena Police Department took no enforcement action, issued no warnings or citations, and did not refer the matter to Code Enforcement or the City Attorney. Officers continued to tell Plaintiff:

• "It's normal,"

• "Not loud enough,"

• "Nothing we can do,"

even after learning the noise was intentional retaliation.

30E. Pasadena's refusal to act despite knowing the retaliatory motive demonstrates:

• deliberate indifference,

• selective non-enforcement, and

• unequal protection under the Fourteenth Amendment.

30F. This officer-confirmed retaliatory motive strengthens Plaintiff's Equal Protection and Monell claims, as Pasadena officers were aware of intentional harassment but chose to do nothing.

## 8. Selective Enforcement

31. While ignoring Plaintiff's repeated nuisance complaints, the City vigorously prosecuted Plaintiff over a minor traffic citation, Citation No. E1637637, issued August 15, 2023.

32. The stark contrast — aggressive prosecution of Plaintiff, versus zero enforcement against violators harming Plaintiff — is a textbook Equal Protection / selective enforcement **violation.[2]**

---

[2] **FOOTNOTE: Selective-Enforcement Equal Protection Case Law**

**Village of Willowbrook v. Olech, 528 U.S. 562 (2000) (recognizing class-of-one Equal Protection claims for irrational, arbitrary municipal enforcement).**

**Yick Wo v. Hopkins, 118 U.S. 356 (1886) (Equal Protection violated when a city enforces laws against some people but refuses enforcement against others, even where laws appear neutral).**

**Snowden v. Hughes, 321 U.S. 1 (1944) (intentional, arbitrary non-enforcement of laws may violate Equal Protection).**

**Bryan v. City of Madison, 213 F.3d 267 (5th Cir. 2000) (class-of-one claims allowed where city selectively enforces ordinances without rational basis).**

33. Pasadena's refusal to enforce mandatory TCEQ spray-booth regulations, stack-height standards, and the 50-foot residential-protection rule — while simultaneously enforcing minor traffic laws against Plaintiff — further demonstrates arbitrary and unequal enforcement under the Equal Protection **Clause.**[3]

## C. PASADENA'S PATTERN OF FAILING TO DISCIPLINE OR SUPERVISE OFFICERS

34. Pasadena maintains a long-standing, well-documented pattern of failing to discipline its officers for misconduct. Officers often receive:

- minimal punishment,

- no punishment,

- promotions, or

- continued employment

---

Freeman v. City of Santa Ana, 68 F.3d 1180 (9th Cir. 1995) (selective enforcement of zoning and noise codes creates §1983 liability).

City of Arlington v. Gallagher, 326 S.W.3d 714 (Tex. App. 2010) (cities must properly enforce nuisance and environmental codes protecting residents).

Schneider Nat'l Carriers, Inc. v. Bates, 147 S.W.3d 264 (Tex. 2004) (recurring environmental emissions and odors constitute a continuing nuisance actionable under Texas law).

[3] FOOTNOTE: Environmental-Regulation Enforcement Case Law
• Jamail v. Stoneledge Condo. Owners Ass'n, 970 S.W.2d 673 (Tex. App. 1998) (environmental-rule violations support liability).
• Bennett v. City of Dallas, 201 S.W.3d 324 (Tex. App. 2006) (cities must enforce state environmental protections).
• FPL Farming Ltd. v. EPS, 351 S.W.3d 306 (Tex. 2011) (violations of state environmental rules create liability).
• City of Dallas v. Stewart, 361 S.W.3d 562 (Tex. 2012) (city must abate environmental hazards).
• Holubec v. Brandenberger, 111 S.W.3d 32 (Tex. 2003) (emissions/odors constitute nuisance).
• Schneider Nat'l Carriers v. Bates, 147 S.W.3d 264 (Tex. 2004) (recurring fumes/odors = continuing nuisance).
• Cross v. City of Dallas, 365 S.W.2d 888 (Tex. App. 1963) (setback protections are enforceable environmental protections).

despite serious constitutional concerns.

   35.  Examples include:


- Susan Clifton v. City of Pasadena (2023) — documented failures to discipline officers despite repeated misconduct.

-  Hernandez v. City of Pasadena (S.D. Tex. 2010) —"Public records in Hernandez v. City of Pasadena reveal that Pasadena officers shot an unarmed man even after dispatch had confirmed he was not the suspect. Officer Michael Martin fired more than seventeen rounds at Hernandez—continuing even after he fell—while other officers on scene had already secured the area without force. Pasadena's failure to discipline Martin or correct the practices that allowed such force demonstrates a continuing municipal custom of excessive force and inadequate supervision, supporting Plaintiff's Monell claim."


- In Schenk v. City of Pasadena, S.D. Tex. Case No. 4:20-cv-03799, Pasadena Police Officer Rigoberto R. Saldivar fatally shot an unarmed man after a traffic stop. Despite the seriousness of the incident, the City imposed no meaningful discipline.


- In Aviles v. Saldivar, S.D. Tex. Case No. 4:22-cv-03571, the same officer, Rigoberto R. Saldivar, shot another man in 2021. Once again, the City failed to discipline or remove him, demonstrating a continued pattern of non-supervision, inadequate review of force incidents, and deliberate tolerance of unconstitutional conduct.


- Multiple excessive-force or misconduct complaints resulting in paid leave, rather than **discipline.**[4]


Further evidence of Pasadena's long-standing pattern of failure to discipline, falsifying reports, excessive force, and deliberate indifference includes:

---

[4] **See Board of County Commissioners v. Brown, 520 U.S. 397, 409–11 (1997) (municipal liability arises where failure to supervise or discipline oGicers makes constitutional violations a plainly foreseeable consequence).**

### a. Wrongful Arrest & Fabricated Evidence – Cardona v. Pasadena (2020)

Public records show that Pasadena officers wrongfully arrested David Cardona for DWI on February 9, 2020, after allegedly fabricating evidence of intoxication. Cardona passed all sobriety tests, and officers initially told him he would be released. When he asked to call someone, Senior Officer Mark A. Ferguson abruptly ordered: "Take him to jail" without cause. Officers Ferguson, Elias Vega, and Damon P. Drey then submitted reports and affidavits that omitted exculpatory facts and falsely described signs of intoxication.

Internal Affairs substantiated Cardona's complaint, and prosecutors later dismissed the case. Despite this finding, Chief Joshua Bruegger imposed no discipline whatsoever—no suspension, demotion, or written reprimand—ordering only "retraining" while publicly defending the officers.

This incident is powerful Monell evidence because even when Pasadena confirms officers fabricated evidence, policymaker Bruegger still refuses discipline, demonstrating deliberate indifference and a predictable risk of future violations.

z

### B. Internal Affairs "Cover-Up" Culture (Ongoing)

Multiple lawsuits, including Aviles, Schenk, and officer depositions, describe Pasadena's Internal Affairs process as designed to protect officers. Practices include:

- allowing officers involved in shootings to receive unrecorded walk-throughs with lawyers before giving statements

- IA investigators permitting officers to revise answers during interviews

- exonerating officers even where video contradicts their reports

- ignoring physical evidence in favor of officer narratives

Detective Michael Cooper testified that in every shooting he investigated, this protective process was followed.

This shows a municipal custom: IA exists to clear officers, not to discipline them.

### e. Public Complaints Ignored – City Council Testimony (2024)

At an October 1, 2024 Pasadena City Council meeting, a resident publicly testified that:

- he was physically assaulted and threatened with arrest by Pasadena officers,

- Internal Affairs ignored his complaints, never responding to his calls or emails, and

- city officials showed no interest in investigating or addressing misconduct.

Neither the Chief nor the council initiated any review.

This shows a citywide practice of refusing to investigate citizen complaints, supporting deliberate indifference under Monell.

36. The Fifth Circuit recognizes that failure to train or discipline can constitute municipal liability.

    See World Wide Street Preachers Fellowship v. Town of Columbia, Gomez v. Galman, Anokwuru v. City of Houston.

    Decisions and tolerances made by Pasadena policymakers—including the Police Chief and municipal supervisors—contributed directly to the constitutional violations described in this Complaint

37. The Supreme Court confirms that policymaker decisions—including refusal to discipline— can create Monell **liability.**[5]

---

[5] See Pembaur v. City of Cincinnati, 475 U.S. 469, 480–81 (1986) (a single decision by an authorized municipal policymaker may constitute olicial policy under §1983); City of Canton v. Harris, 489 U.S. 378,

See Pembaur v. Cincinnati, City of Canton v. Harris, Board of County Commissioners v. Brown.

38. Legal scholarship also recognizes "failure to discipline" as a well-established Monell theory.

See Karen M. Blum, "Making Out the Monell Claim."

39. Pasadena's history of non-discipline mirrors the City's refusal to enforce:

- safety rules

- setback rules

- nuisance ordinances

- noise laws

- environmental protections

while aggressively enforcing laws against Plaintiff.

"Public records in Clifton v. City of Pasadena, No. __ (Tex. App.—Houston [14th Dist.] 2020) document internal failures by Pasadena officials, including retaliation, inadequate supervision, and a pattern of disregarding complaints made by citizens and employees. While Clifton involved employment retaliation under state law, the factual findings in that case reflect broader systemic deficiencies within Pasadena's administrative structure. These documented patterns support Plaintiff's Monell claim that Pasadena's policies, customs, and failure to supervise or discipline officers foreseeably result in constitutional violations."

Hernandez v. City of Pasadena, Case No. 4:10-cv-00979 (S.D. Tex.) — "Public records in Hernandez v. City of Pasadena provide detailed evidence of longstanding deficiencies in Pasadena's training, supervision, and use-of-force practices. In that case, Pasadena dispatch informed responding officers, including Officer Michael Martin, that Oscar Hernandez was unarmed and not the suspect in the reported disturbance. Officers already on scene had secured the area and obtained full compliance from Hernandez without incident. Despite this, Officer Martin arrived, immediately opened fire, and discharged more than seventeen rounds—continuing to shoot even after Hernandez fell to the ground and lay motionless in a pool of

---

**388–92 (1989) (failure to train can establish municipal liability where it reflects deliberate indilerence); Board of County Commissioners v. Brown, 520 U.S. 397, 409–11 (1997) (municipal liability exists where inadequate supervision or discipline makes constitutional violations foreseeable).**

blood. Pasadena officers then failed to provide timely medical aid despite the obvious severity of the injuries. After the shooting, the City took no meaningful corrective or disciplinary action against Martin, instead retaining him and excusing his conduct. These facts reflect Pasadena's broader custom of failing to investigate or discipline officers who use excessive force, failing to train officers in de-escalation and communication with non-English-speaking residents, and tolerating unconstitutional policing practices. This pattern directly supports Plaintiff's Monell claim that Pasadena's policies, customs, and failures of supervision foreseeably result in constitutional violations."

"In Schenk v. City of Pasadena, S.D. Tex. Case No. 4:20-cv-03799, a Pasadena officer fatally shot an unarmed man following a traffic stop. Despite the severity of the incident and the constitutional concerns raised, the City of Pasadena failed to impose any meaningful discipline. The City's decision to retain the officer without corrective action reflects a broader custom of excusing or ignoring officer misconduct, reinforcing Plaintiff's Monell claim that Pasadena's inadequate supervision foreseeably results in constitutional violations."

 "Similarly, in Aviles v. Saldivar, S.D. Tex. Case No. 4:22-cv-03571, the same Pasadena officer again used deadly force in 2021, shooting another individual. Once more, the City took no significant disciplinary action, instead continuing to support and retain the officer. Pasadena's repeated failure to discipline an officer involved in multiple shootings establishes a municipal pattern of protecting officers regardless of misconduct, demonstrating deliberate indifference and supporting Plaintiff's Monell allegations."

"Municipal immunity does not shield the City of Pasadena from liability under 42 U.S.C.

§1983. As the Supreme Court held in Monell v. Department of Social Services, 436 U.S. 658, 690, 702 (1978), municipalities have no immunity from damages when their policies, customs, or practices cause constitutional violations. Therefore, Pasadena is fully subject to suit in this action for the unconstitutional policies, failures to train, selective enforcement practices, and due-process violations described herein."

40. This history demonstrates deliberate indifference and proves Plaintiff's injuries were foreseeable.

**Pasadena Police Suppression of Evidence, Incomplete Record Production, and Interference with Plaintiff's Public Information Act Requests**

Beginning in 2025, Plaintiff submitted multiple Public Information Act requests ("PIRs") to the Pasadena Police Department seeking body-worn camera videos, dash camera recordings, CAD logs, dispatch audio, and other documentation related to police responses to Plaintiff's complaints, including incidents at Gardner Field and repeated morning drumming disturbances near Plaintiff's home.

## A. Withholding of Baseball Field Videos and False Claim of "No Responsive Documents"

Plaintiff made more than three separate calls for service regarding noise disturbances and errant baseballs originating from Gardner Field. During one of these incidents, a City employee told Plaintiff that the disturbance was "his fault for living in front of a baseball field." Plaintiff requested all responsive records for these calls, including all body-worn camera footage, dash camera videos, CAD logs, dispatch recordings, and officer arrival/departure timestamps.

Despite these multiple calls, Pasadena Police produced only three (3) videos, while withholding the remainder of the responsive recordings. When Plaintiff challenged this incomplete production, Pasadena Police falsely stated that "there are no responsive documents", even though CAD logs and dispatch activity necessarily exist for each call. Pasadena Police closed or attempted to close the PIR despite Plaintiff's written instruction: "Do not close or finalize the request. I am not refusing to pay; I am requesting a complete and accurate fulfillment."

## B. Improper Cost Estimates and Refusal to Provide Required Itemization

In a separate PIR concerning noise complaints and drumming disturbances, Pasadena Police issued a cost estimate that included an illegal flat fee of $10 per body-worn camera recording and additional per-minute charges, without providing any of the legally required itemization under Texas Government Code §§ 552.261 and 552.262. The estimate contained:

- No redaction labor minutes

- No upload or programming labor minutes

- No employee pay rate

- No overhead percentage

- No media cost

- No documentation of actual time spent locating or preparing responsive records

When Plaintiff objected and requested that the estimate be brought into compliance with the statute, Pasadena Police refused to revise the estimate, refused to provide the required breakdown, and asserted boilerplate language that did not address Plaintiff's legal objections. Pasadena Police also refused to attach Plaintiff's clarifying message to the active PIR, citing the artificial system status of "Cost Estimate Sent."

## C. Pattern of Obstruction, Arbitrary Non-Enforcement, and Retaliatory Withholding of Evidence

These actions—partial productions, false statements that no responsive records exist, unlawful flat-fee estimates, refusal to itemize charges, premature closure of requests, and suppression of footage documenting officer misconduct—demonstrate a pattern of obstruction and deliberate indifference to Plaintiff's rights. Pasadena Police repeatedly interfered with Plaintiff's ability to obtain evidence necessary to document harassment, noise disturbances, and City inaction.

This conduct further supports Plaintiff's Monell claim, as it reflects a custom or practice within the City of Pasadena of:

1. Minimizing or dismissing citizen complaints,

2. Withholding or restricting access to body-worn camera evidence,

3. Issuing noncompliant cost estimates to deter records requests, and

4. Obstructing the evidence-gathering process in retaliation for Plaintiff's attempts to assert his rights.

These acts also burden Plaintiff's First Amendment right to petition, his due-process rights, and his ability to obtain, preserve, and present evidence regarding unconstitutional conduct by Pasadena employees.

## Irregular and Disorganized Proceedings in Pasadena Municipal Court

41. During the municipal court hearing on December 6, 2023, Plaintiff observed conduct from the assigned prosecutor, Matthew R. Montes, that was highly irregular for a routine traffic docket. Specifically, when Plaintiff and Mr. Montes were called to the counsel

table in front of the judge, the prosecutor appeared visibly distressed and repeatedly consumed multiple aspirin tablets during the proceeding.

42. Plaintiff reasonably interpreted this behavior as an indication that the prosecutor was overwhelmed, unprepared, or otherwise unable to conduct the hearing in a calm, orderly, and professional manner. Prosecutors handling routine traffic matters do not typically exhibit visible signs of distress or confusion, and such conduct is inconsistent with standard courtroom practice.

43. The prosecutor's impaired composure directly reflected the broader disorganization of the municipal court process. The City of Pasadena failed to ensure that its prosecutorial staff were adequately trained, supervised, or capable of managing even basic procedural responsibilities.

44. This visible confusion occurred alongside multiple procedural irregularities already present in Plaintiff's case, including:

(a) entering a "not guilty" plea on Plaintiff's behalf without Plaintiff's consent;

(b) failing to provide timely or proper notice of hearings;

(c) refusing to rule on Plaintiff's Motion to Set Aside; and

(d) conducting proceedings without offering Plaintiff a meaningful opportunity to be heard.

45. The prosecutor's conduct further heightened Plaintiff's reasonable concern that the proceedings were not being handled impartially or in compliance with due process. The environment of confusion, rushed decision-making, and visible distress demonstrated that the City's processes were neither stable nor constitutionally reliable.

a. These circumstances are consistent with a broader pattern of inadequate training, supervision, and procedural safeguards within the Pasadena Municipal Court system. The conduct of Prosecutor Montes is therefore not an isolated occurrence, but evidence of the City's policy, practice, or custom of operating municipal proceedings in a disorganized manner that foreseeably results in constitutional violations.

b. As a direct result of the City's failure to maintain orderly, trained, and competent court personnel, Plaintiff suffered anxiety, confusion, emotional distress, and a reasonable loss of trust in the fairness and reliability of the judicial process. These injuries constitute compensable damages under 42 U.S.C. § 1983.

## V.   CAUSES OF ACTION

**COUNT I — 42 U.S.C. §1983 — Fourth Amendment Violation (Unlawful Seizure & Coercion)**

46.  Defendant Officer Joseph M. Lockmondy (#4039), acting under color of state law, unlawfully threatened Plaintiff with arrest if Plaintiff did not immediately produce identification, despite the absence of reasonable suspicion or any lawful basis for such a demand. Plaintiff's constitutional right to freedom of movement, protected by Article IV and the Fourteenth Amendment, was infringed when Officer Lockmondy initiated a stop without individualized reasonable suspicion. The State may regulate vehicle operation, but may not unreasonably interfere with a citizen's right to free movement absent lawful cause.

47. Officer Lockmondy further coerced Plaintiff into signing a citation under threat of arrest and through intimidation, including summoning additional officers to the scene to pressure Plaintiff into compliance. A coerced signature does not constitute voluntary consent, and such threats deprive a person of fair process under the Fourteenth Amendment.

48. Such conduct deprived Plaintiff of his Fourth Amendment rights, including the right to be free from unreasonable seizure, coercion, and compelled compliance under threat of imprisonment.[6]

49. Officer Lockmondy explicitly stated on video that he stopped Plaintiff "because [Plaintiff] was in the front of the line," despite acknowledging that multiple surrounding vehicles were traveling at the same alleged speed. This admission demonstrates the absence of individualized reasonable suspicion, rendering the traffic stop unconstitutional under the Fourth Amendment. Officer Lockmondy's admission on video that Plaintiff was stopped merely because he was "in the front of the line," despite other vehicles traveling at the same alleged speed, demonstrates arbitrary interference with Plaintiff's liberty interest in intrastate travel.

---

[6] See Terry v. Ohio, 392 U.S. 1 (1968) (oGicers must have reasonable suspicion before detaining or demanding identification); Hiibel v. Sixth Judicial Dist. Court, 542 U.S. 177 (2004) (oGicers may request ID only during a lawful Terry stop and cannot arrest for refusal unless the stop is lawful and supported by reasonable suspicion); Brown v. Texas, 443 U.S. 47 (1979) (Texas oGicers violated the Fourth Amendment by detaining and demanding ID without reasonable suspicion). Texas does not permit arrest solely for failure to provide ID unless a person is already lawfully arrested. OGicer Lockmondy's threat — "If you don't give me your ID, you're going to jail" — therefore constitutes unlawful coercion and an unreasonable seizure.

**50. Plaintiff's constitutional right to freedom of movement, protected by Article IV and the Fourteenth Amendment, was infringed when Officer Lockmondy initiated a stop without individualized reasonable suspicion. The State may regulate vehicle operation, but may not unreasonably interfere with a citizen's right to free movement absent lawful cause.**

**COUNT II – Equal Protection (Class-of-One Selective Enforcement)**

Against All Defendants

    a. Plaintiff realleges and incorporates all preceding paragraphs.

    b. Defendants violated Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment by intentionally treating Plaintiff differently from similarly situated individuals without any rational basis.

    c. Pasadena aggressively enforced a minor traffic citation against Plaintiff while repeatedly refusing to enforce nuisance, environmental, setback, noise, and safety ordinances that protect Plaintiff's home.

    d. Plaintiff made repeated complaints to Pasadena Police Department, Pasadena Code Enforcement, Harris County Pollution Control, the Fire Marshal, and environmental authorities, yet Defendants failed to act.

    e. In contrast, Pasadena has enforced similar ordinances when complaints were made by other residents in different neighborhoods, demonstrating that Plaintiff was singled out.

    f. This "class-of-one" selective enforcement was intentional, irrational, and motivated by animus or arbitrary decision-making.

    g. Defendants' refusal to take any action despite ongoing violations constitutes unequal protection under the law.

    h. As a direct result of Defendants' unconstitutional selective enforcement, Plaintiff suffered damages including emotional distress, loss of quiet enjoyment of property, health effects, and ongoing harm.

i.  Officer Lockmondy admitted that Plaintiff was stopped solely because he was "in the front of the line," even though other vehicles were allegedly traveling at the same speed. This is arbitrary, irrational, and constitutes class-of-one selective enforcement[7] under Village of Willowbrook v. Olech, because similarly situated drivers were not stopped or cited.

j.  During the municipal proceedings, Plaintiff sought to challenge the authority and procedure of the municipal court before entering a plea. The judge, however, denied Plaintiff a meaningful opportunity to be heard and unilaterally entered a plea of "not guilty" on Plaintiff's behalf without consent. This constitutes a deprivation of Plaintiff's due process rights under the Fourteenth Amendment.

## COUNT III – Monell Liability

**Legal Standard for Municipal Liability.**

Section 1983 imposes liability on any "person" who, under color of state law, causes the deprivation of federal rights. Municipalities qualify as "persons" under Monell v. Department of Social Services, 436 U.S. 658 (1978), but they are not liable simply because they employ a wrongdoer. A city may only be held liable when the constitutional injury results from the municipality's own policy, custom, or decision by an authorized policymaker. Id. at 691; Doe v. Edgewood ISD, 964 F.3d 351, 364–65 (5th Cir. 2020).

To establish municipal liability, a plaintiff must show: (1) an official policy or widespread custom; (2) that was promulgated or ratified by a final policymaker; and (3) that this policy or custom was the moving force behind the constitutional violation. See Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001). A single decision by a municipal policymaker— such as a Police Chief's refusal to discipline an officer—may constitute official policy where the decisionmaker has final authority on the matter. Pembaur v. City of Cincinnati, 475 U.S. 469, 480–81 (1986).

Municipal liability is also established when a pattern of non-discipline, failure to train, or refusal to supervise makes constitutional violations plainly foreseeable. City of Canton v. Harris, 489 U.S. 378, 388–92 (1989); Board of County Comm'rs v. Brown, 520 U.S. 397, 409–11 (1997).

---

[7] See Village of Willowbrook v. Olech, 528 U.S. 562 (2000) (recognizing class-of-one claims where the government intentionally singles out an individual for diGerent treatment without a rational basis).

These principles govern Plaintiff's Monell claim against the City of Pasadena.

**Types of Monell Policies and Customs.**

Courts recognize several ways a plaintiff may establish the "official policy" element of a Monell claim. Most commonly, a policy is shown through written directives such as ordinances, formal regulations, or official policy statements. A policy may also be demonstrated through a widespread and well-settled practice carried out by municipal employees, even if it isn't formally written, when that practice is so persistent that it fairly represents the municipality's chosen way of operating. See Webb v. Town of Saint Joseph, 925 F.3d 209, 214–15 (5th Cir. 2019).

In some circumstances, a single decision by an official with final policymaking authority may itself constitute municipal policy, even without a written rule or pattern of conduct. Courts describe these as "rare" cases, but they are recognized when the policymaker's decision directly causes the constitutional harm. Id.

Additionally, a municipality's failure to train, supervise, or discipline its employees can qualify as an official policy when the failure is so severe that it amounts to deliberate indifference to the rights of citizens. Connick v. Thompson, 563 U.S. 51, 61 (2011). Courts within this Circuit also acknowledge that such failures—when sufficiently connected to the constitutional injury—can support Monell liability. See, e.g., Madden v. Gribbon, 2022 WL 4360558, at *5 (N.D. Tex. 2022).

**Failure to Train, Supervise, or Discipline – Legal Standards and Cases**

Courts recognize that a municipality's failure to train, supervise, or discipline its employees can amount to an official policy for purposes of § 1983. However, to state such a claim, a plaintiff must plausibly allege three elements: (1) that an official policymaker consciously failed to discipline, train, or supervise employees; (2) that this failure rose to the level of deliberate indifference; and (3) that the failure directly caused the constitutional violation. See Hunter v. City of Houston, 564 F. Supp. 3d 517, 529 (S.D. Tex. 2021) (citing Deville v. Marcantel, 567 F.3d 156, 171 (5th Cir. 2009)). Each element is distinct: the first prong combines both the "official policy" and "policymaker involvement" requirements; the second prong imposes an additional requirement of deliberate indifference; and the third prong addresses causation.

Pattern requirement and systemic failure. Claims of this nature most often proceed on the argument that the municipality's disciplinary or training program was inadequate, and that this systemic inadequacy resulted in the deprivation of constitutional rights. Roberts v. City of

Shreveport, 397 F.3d 287, 293 (5th Cir. 2005); City of Canton v. Harris, 489 U.S. 378, 390 (1989) (noting that "the failure to provide proper training may fairly be said to represent a policy for which the city is responsible"). The focus in these cases is on a pattern or custom that shows "systematic inattention" to misconduct — for example, investigations that are superficial, perfunctory, or designed to exonerate officers. A plaintiff normally must allege a "pattern of similar constitutional violations by untrained employees" to establish deliberate indifference. See Piotrowski v. City of Houston, 237 F.3d 567, 581–82 (5th Cir. 2001) (emphasizing that a pattern is necessary both to prove an official policy and to show deliberate indifference); Hutcheson v. Dallas County, 994 F.3d 477, 482 (5th Cir. 2021) (reaffirming that plaintiffs ordinarily must show repeated, similar violations).

Single-decision liability. The absence of a pattern is not always fatal. Under "rare circumstances," a single decision by a final policymaker not to train, supervise, or discipline an employee can constitute an official policy. In Brown v. Bryan County, the Fifth Circuit held that a county could be liable for failing to train an inexperienced reserve deputy where the sheriff knew the deputy had no training and a history of misconduct, and yet still entrusted him with authority; the deputy's subsequent use of excessive force was deemed a highly predictable result. Although Brown was a failure-to-train case, the same principle applies to failure-to-supervise and failure-to-discipline theories. A plaintiff pursuing a single-decision theory must show that the policymaker ignored a clear constitutional duty — such as the duty not to use excessive force — and that the resulting injury was a foreseeable consequence of that decision. This is a demanding standard: the Fifth Circuit warns that deliberate indifference is difficult to establish when relying on a single incident, and plaintiffs must demonstrate that the injury was "highly predictable" given the policymaker's failure to act.

Case examples. Hunter (S.D. Tex. 2021) and Deville (5th Cir. 2009) illustrate the three-prong framework in practice. Connick v. Thompson, 563 U.S. 51, 61 (2011), reinforces that failures to train or discipline may rise to the level of municipal policy only in limited circumstances and when deliberate indifference is shown. Roberts (5th Cir. 2005) and Piotrowski (5th Cir. 2001) underscore the need for a pattern of constitutional violations to establish deliberate indifference. Hutcheson (5th Cir. 2021) reiterates this pattern requirement, while Brown v. Bryan County, 219 F.3d 450 (5th Cir. 2000), provides the leading example of single-decision liability. Littell v. Houston ISD, 894 F.3d 616, 624–25 (5th Cir. 2018), recognizes that municipalities can be liable when they fail to train employees on clear constitutional duties, such as the duty to avoid excessive force. Valle v. City of Houston, 613 F.3d 536, 549 (5th Cir. 2010), explains that an injury is "highly predictable" only when the municipality failed to train on a recurrent duty that employees are certain to face.

**Application at the pleading stage.**

At the Rule 12(b)(6) stage, courts do not evaluate whether the plaintiff can ultimately prove the claim; the only question is whether the complaint contains factual allegations that, if true, make municipal liability plausible. As the Southern District of Texas explained in Aviles v. Saldivar, well-pleaded allegations showing a municipality's repeated failure to supervise, discipline, or correct employee misconduct are sufficient to state a Monell claim at the motion-to-dismiss stage. In this case, Plaintiff alleges that the City of Pasadena has consistently failed to discipline or retrain officers, code-enforcement personnel, and municipal-court prosecutors despite repeated complaints and obvious constitutional violations; that the City ignored or refused to investigate misconduct; and that final policymakers ratified these failures. These allegations, taken as true, are more than sufficient to plausibly satisfy the elements of a failure-to-train, supervise, or discipline theory under Monell.

**Application of Monell Failure-to-Act Principles to Plaintiff's Allegations**

The allegations in this Complaint, viewed collectively, establish a plausible claim for municipal liability under a failure-to-discipline, failure-to-train, and failure-to-supervise theory. Plaintiff alleges, among other things, that:

(1) Pasadena officials—including Pasadena Police Department, Code Enforcement, the Fire Marshal, and municipal court prosecutors—were repeatedly notified over an extended period of clear nuisance, safety, environmental, and ordinance violations occurring at and around Plaintiff's home;

(2) the City was fully aware that Plaintiff's repeated complaints documented ongoing violations of the 50-foot spray-booth rule, the $1.2\times$ stack-height safety requirement, excessive noise from Gardner Field, drumming, fumes, dust, and chronic code violations by neighboring properties;

(3) despite this notice, Pasadena policymakers took no meaningful corrective action, imposed no discipline, and conducted no retraining of personnel;

(4) rather than address violations harming Plaintiff, Pasadena officials aggressively prosecuted Plaintiff's minor traffic citation and mishandled Plaintiff's municipal proceedings through irregular, confused, and constitutionally deficient conduct; and

(5) Pasadena's long-standing pattern of non-enforcement and refusal to discipline demonstrates deliberate indifference and foreseeably caused Plaintiff's constitutional injuries.

Under Brown v. Bryan County, 219 F.3d 450 (5th Cir. 2000), a single policymaker decision may constitute official policy when the policymaker is on notice that failing to act will likely result in

constitutional harm. Here, Plaintiff alleges that final Pasadena decisionmakers—including the
Chief of Police, Code Enforcement supervisors, Fire Marshal officials, and municipal
prosecutors—were repeatedly informed of ongoing violations yet chose not to discipline staff,
enforce ordinances, or retrain personnel. Under Brown, such deliberate refusals to act may serve
as municipal policy.

This case likewise fits within the principles discussed in Connick v. Thompson, 563 U.S. 51
(2011), which recognizes that failures to discipline or supervise may rise to the level of
municipal policy where the failure reflects deliberate indifference to recurring constitutional
duties. Pasadena's refusal to enforce mandatory safety ordinances, investigate environmental
hazards, enforce nuisance codes, or ensure orderly municipal court proceedings demonstrates a
disregard for these duties.

Unlike Grandstaff v. City of Borger, 767 F.2d 161 (5th Cir. 1985)—which involved a single,
extreme use-of-force incident—Plaintiff does not ask the Court to infer a municipal policy
solely from the fact that he suffered constitutional violations. Rather, Plaintiff alleges that
Pasadena had long-standing, repeated notice of systemic failures across multiple departments
and repeatedly refused to discipline or retrain personnel, bringing this case squarely within the
Brown framework rather than Grandstaff. The Fifth Circuit in Peña v. City of Rio Grande City,
879 F.3d 613 (5th Cir. 2018), cautioned against inferring deliberate indifference from a single
event; here, Plaintiff alleges repeated, documented failures over several years.

Similarly, Piotrowski v. City of Houston, 237 F.3d 567, 579–82 (5th Cir. 2001), and Peterson v.
City of Fort Worth, 588 F.3d 838, 851 (5th Cir. 2009), establish that a pattern of misconduct
often demonstrates the existence of a municipal custom. Plaintiff alleges a pattern of non-
enforcement and refusal to discipline:

• failure to enforce environmental and nuisance regulations over a five-year span;

• failure to investigate noise and safety complaints;

• failure to follow basic municipal court procedures;

• failure by multiple departments to act despite ongoing, repeated complaints;

• aggressive enforcement against Plaintiff while refusing enforcement against violators harming
Plaintiff.

These allegations satisfy the plausibility requirement for a pattern, particularly at the motion-to-dismiss stage. As the Fifth Circuit emphasized in Deville v. Marcantel, 567 F.3d 156 (5th Cir. 2009), and Hunter v. City of Houston, 564 F. Supp. 3d 517 (S.D. Tex. 2021), a complaint need only allege facts that—if true—support a reasonable inference that a municipal policy caused the constitutional injury.

Plaintiff also asserts a related claim that Pasadena maintains a municipal custom of selectively enforcing ordinances against certain residents while refusing enforcement against others. As recognized in Peterson, a custom may be shown by persistent, widespread practices that are so common as to represent municipal policy, even when not formally adopted. Plaintiff alleges that Pasadena:

• enforces traffic laws aggressively against him,

• while refusing to enforce nuisance, noise, environmental, and safety ordinances that protect his home,

• while enforcing similar ordinances for other residents in other neighborhoods.

These allegations plausibly plead a custom of selective enforcement in violation of Equal Protection under Village of Willowbrook v. Olech, 528 U.S. 562 (2000), and Bryan v. City of Madison, 213 F.3d 267 (5th Cir. 2000).

At this procedural stage, the Court must accept all well-pleaded allegations as true. Taken as a whole, Plaintiff's factual allegations—spanning multiple years, multiple departments, and repeated refusals to act—plausibly support Monell liability under the theories recognized in Pembaur v. City of Cincinnati, 475 U.S. 469 (1986); City of Canton v. Harris, 489 U.S. 378 (1989); Board of County Commissioners v. Brown, 520 U.S. 397 (1997); Piotrowski; Peterson; Deville; Connick; Hunter; and Peña.

Against City of Pasadena

**51.** Plaintiff realleges and incorporates all preceding paragraphs.

**52.** The City of Pasadena is liable under Monell v. Department of Social Services, 436 U.S. 658 (1978), because Plaintiff's constitutional injuries were caused by the City's official policies, customs, and practices, including:

- a long-standing pattern of failing to discipline officers,

- failure to retrain or supervise officers despite known misconduct,

- refusal to enforce nuisance, setback, environmental, and safety ordinances,

- selective enforcement of laws against certain residents, including Plaintiff,

- a municipal culture of non-accountability and deliberate indifference.

---

53. Pasadena's history of retaining officers involved in shootings, excessive-force incidents, and repeated misconduct — while giving minimal or no discipline — demonstrates a municipal custom of ignoring constitutional violations.

54. The City's refusal to enforce the 50-foot rule, stack-height rule, nuisance ordinances, and noise ordinances, despite Plaintiff's repeated complaints, is consistent with its broader failure to enforce laws evenly and consistently.

55. The Supreme Court and Fifth Circuit recognize municipal liability where policymakers refuse to discipline, train, or supervise officers. See Pembaur, Canton, Brown, World Wide Street Preachers Fellowship, Gomez v. Galman, Anokwuru v. City of Houston.

56. Pasadena's continued non-enforcement made constitutional injury to Plaintiff highly predictable and foreseeable.

57. The City's policies and customs were the moving force behind the violation of Plaintiff's Equal Protection rights.

58. As a result of Pasadena's Monell violations, Plaintiff suffered damages including emotional distress, loss of use and enjoyment of property, exposure to fumes and noise, and continued selective treatment by City officials.

59. Pasadena's repeated failures to enforce its own ordinances, discipline its officers, train them properly, or supervise their conduct collectively evidences a Monell liability issue — namely, the City's failure to train, supervise, discipline, or require correct enforcement by Pasadena Police officers, resulting in ongoing constitutional **violations.**[8]

60. The City of Pasadena's pattern of arbitrary traffic enforcement, failure to train officers regarding lawful seizure standards, and disregard for citizens' procedural rights demonstrates a municipal custom of overreach that foreseeably results in constitutional violations, including unlawful interference with citizens' right to travel and due process protections.

---

[8] See City of Canton v. Harris, 489 U.S. 378, 388–92 (1989) (municipalities are liable under §1983 when failure to train amounts to deliberate indiGerence to constitutional rights).

**61.** Public records in Schenk v. City of Pasadena and Aviles v. Saldivar establish that Pasadena repeatedly failed to discipline Officer Rigoberto R. Saldivar after multiple shootings of unarmed individuals during traffic stops. In Schenk, Chief Bruegger reviewed body-camera footage and an Internal Affairs finding that Saldivar used excessive force, yet imposed no discipline and later granted Saldivar a raise. In Aviles, Plaintiff alleged that this failure to discipline emboldened Saldivar to shoot another unarmed civilian. These events demonstrate Pasadena's custom of protecting officers who engage in excessive force, reinforcing Plaintiff's Monell claim of deliberate indifference and failure to supervise.

## VI.  DAMAGES

**Plaintiff seeks the following relief:**

- **compensatory damages for loss of quiet enjoyment of property, interference with daily living, physical discomfort, diminished residential value, and other harms;**

- **punitive damages against all individual defendants (Officer Lockmondy and the John Doe Officers) for reckless, willful, and malicious disregard of Plaintiff's constitutional rights;**

- **emotional-distress damages, including anxiety, sleep disruption, fear of retaliation, humiliation, and ongoing distress caused by Defendants' selective enforcement and refusal to act;**

- **damages for physical discomfort, including exposure to fumes, sanding dust, mechanical noise, daily disturbances from the Shop, amplified drumming, and excessive noise from Gardner Field;**

- **declaratory relief stating that Defendants violated Plaintiff's rights under the Fourteenth Amendment and that Pasadena maintained unconstitutional policies, practices, and customs;**

- **injunctive relief ordering the City of Pasadena to:**

  - **enforce the 50-foot rule,**

  - **enforce the 1.2× stack-height requirement,**

  - **enforce nuisance and environmental ordinances uniformly,**

  - **cease selective or unequal enforcement of any ordinances,**

- o **implement reasonable scheduling practices for public events at Gardner Field and similar facilities,**
- o **properly investigate future complaints made by Plaintiff,**
- o **and provide adequate training, supervision, and discipline to prevent further constitutional violations;**
- **attorney's fees and litigation costs under 42 U.S.C. §1988 (even though Plaintiff is pro se, fees may be recoverable if counsel enters later);**
- **any additional relief, both legal and equitable, that the Court deems just, proper, and necessary to remedy the constitutional violations.**

## VII. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that upon final hearing, the Court grant the following relief:

1. A declaration that Defendants violated Plaintiff's rights under the Fourteenth Amendment to the United States Constitution;

2. A declaration that the City of Pasadena maintained unconstitutional policies, practices, customs, and patterns of selective enforcement, failure to discipline, and deliberate indifference;

3. Compensatory damages in an amount to be determined by the evidence presented at trial;

4. Punitive damages against all individual defendants for reckless, willful, and malicious disregard of Plaintiff's constitutional rights;

5. Emotional-distress damages, physical-discomfort damages, and damages for interference with the quiet enjoyment of Plaintiff's home;

6. Injunctive relief ordering the City of Pasadena to:

   - o uniformly enforce the 50-foot rule,

   - o uniformly enforce the 1.2× stack-height rule,

   - o enforce nuisance, noise, and environmental ordinances without discrimination,

   - o properly investigate Plaintiff's future complaints,

   - o adopt reasonable scheduling practices for public events at Gardner Field and similar facilities,

    o  and train, supervise, and discipline its officers and personnel to prevent future violations;

7.  Reasonable attorney's fees and litigation costs under 42 U.S.C. §1988;

8.  Pre-judgment and post-judgment interest as allowed by law;

9.  Any further relief, at law or in equity, that the Court deems just, proper, and necessary.

---

## PLAINTIFF'S NOTICE OF DISCOVERY INTERESTS

## & INTENT TO SERVE FORMAL REQUESTS**

**This Notice pertains to Plaintiff's federal civil rights action under 42 U.S.C. § 1983. Plaintiff provides formal notice of his intent to pursue full discovery under Fed. R. Civ. P. 26, 33, 34, 36, 37, and 45, and relevant Supreme Court authority including Hickman v. Taylor, 329 U.S. 495 (1947), and Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340 (1978). Discovery in §1983 actions is to be construed broadly, and Plaintiff hereby preserves all discovery rights permitted under federal law.**

**Upon the opening of discovery, Plaintiff will request the following categories of evidence relevant to his claims:**

---

## 1. Officer Conduct, Complaints, and Discipline

**Pursuant to Fed. R. Civ. P. 26(b)(1), Plaintiff will request all Internal Affairs files, prior complaints, disciplinary actions, use-of-force records, personnel evaluations, and supervisory notes for every officer involved in the traffic stop, citation issuance, or subsequent municipal court proceedings.[9]**

---

[9] **FOOTNOTE — Case Law Supporting Plaintiff's Right to Officer Misconduct Discovery**

Gomez v. Galman, 18 F.4th 769, 778–79 (5th Cir. 2021)
(The Fifth Circuit held that prior misconduct, disciplinary history, and officer credibility are discoverable in unlawful-seizure and excessive-force cases.)

Anokwuru v. City of Houston, 990 F.3d 956, 963–65 (5th Cir. 2021)

**1A. Officer-Specific Misconduct Discovery (Lockmondy)**

Plaintiff will specifically request the complete personnel file, Internal Affairs history, prior complaints, disciplinary records, supervisory evaluations, and use-of-force reports pertaining to Officer Joseph M. Lockmondy (#4039).

These materials are relevant to Plaintiff's Fourth Amendment claim (unlawful seizure and coercion), Equal Protection claim (selective enforcement), and Monell claim (failure to train, supervise, or discipline).

Evidence of prior threats, coercive conduct, unlawful ID demands, improper detentions, or citizen complaints is highly probative of pattern, motive, credibility, and foreseeability of constitutional injury.

**Chief Brugger's Documented Pattern of Non-Discipline Creates a Strong Basis for Discovery**

Because Chief Joshua Brugger personally decided disciplinary outcomes in several high-profile Pasadena incidents involving excessive force, Plaintiff will request discovery specifically related to Brugger's supervisory practices, disciplinary decisions, emails, internal memoranda, and communications with Internal Affairs. Federal cases involving the City of Pasadena already document that Chief Brugger repeatedly refused to discipline officers—even when presented with clear evidence of misconduct. This pattern is directly

---

(Failure to train and supervise officers is a valid Monell theory — making discovery into past misconduct, complaints, and disciplinary records directly relevant.)

Hickman v. Taylor, 329 U.S. 495, 507 (1947)
(The Supreme Court held that civil discovery is to be interpreted broadly; parties are entitled to obtain any information reasonably calculated to lead to admissible evidence.)

Fed. R. Civ. P. 26(b)(1)
(Discovery includes "any nonprivileged matter that is relevant to any party's claim or defense" and is not limited to admissible evidence.)

relevant to Plaintiff's Monell claim because it shows deliberate indifference at the policymaker level.

In Aviles v. Saldivar, the complaint alleges that Chief Brugger personally viewed body-camera footage showing that Officer Saldivar shot an unarmed man (Schenk) who was crawling away, yet Brugger imposed no discipline and instead allowed the officer to remain on duty and later receive a raise. Shortly thereafter, the same officer shot another unarmed citizen (Aviles). Court filings describe this as part of Pasadena's custom of protecting officers who use excessive force. Plaintiff therefore requests discovery into Chief Brugger's role in disciplinary decisions, his directives to subordinates, and any communications regarding officer Lockmondy or any other officer involved in Plaintiff's case.[10]

## 2. Training and Policy Compliance (Monell Evidence)

Under Monell v. Department of Social Services, 436 U.S. 658 (1978), Plaintiff will request training manuals, supervisor directives, command-level policies, and records showing failure to train or supervise officers regarding lawful stops, due process, and equal enforcement.

## 3. Body-Worn Camera, Dashcam, and Dispatch Evidence

---

- [10] Aviles v. Saldivar, No. 4:22-cv-03571 (S.D. Tex.)
(Chief Brugger viewed bodycam video of an unarmed man being shot while crawling away, yet imposed no discipline, no retraining, and instead the officer later received a raise.)
- Schenk v. City of Pasadena, No. 4:20-cv-03799 (S.D. Tex.)
(This case describes the same shooting—the Schenk case—and confirms Brugger's refusal to discipline Saldivar despite investigative findings showing excessive force.)
- Clifton v. City of Pasadena, Texas App. (2023)
(Documents systemic failures in Pasadena's internal oversight, including refusal to discipline employees and retaliation against those who report misconduct—occurring under the same police administration led by Brugger.)

---

Pursuant to Rules 34 and 45, Plaintiff will request all body-worn camera files, dashcam files, timestamp metadata, CAD logs, dispatch audio, and any notice of missing, altered, or withheld recordings.

## 4. Municipal Court Operations

Plaintiff will request clerk logs, notices of hearing, docket histories, email communications, due-process protocols, and any records showing irregularities, improper plea entries, clerical errors, or irregularities in Pasadena Municipal Court proceedings relating to Plaintiff, or affecting Plaintiff's case.

## 5. Environmental & Nuisance Complaint Handling (Final Version)

Because Plaintiff's Equal Protection and Monell claims involve selective enforcement and deliberate indifference, Plaintiff will request all logs, call records, complaint files, investigative notes, emails, and supervisory decisions relating to nuisance, noise, or environmental complaints connected to the following locations:

- 1404 Starkey Street — Plaintiff's residence

- 1402 Starkey Street — auto body shop generating noise, dog-barking disturbances, and violating stack-height and 50-foot spray-booth rules

- 1405 Starkey Street (Gardner Field) — excessive sports-event noise, baseballs entering Plaintiff's property at 1404 Starkey Street, and recurring failure by Pasadena to enforce nuisance, safety, and scheduling regulations, including multiple complaints requesting installation or repair of protective netting.

- 1408 Starkey Street — persistent drumming noise and dog-barking complaints repeatedly ignored by Pasadena

Plaintiff will request all associated Pasadena Police non-emergency call logs (713-4771221), Code Enforcement complaint records, internal notes, emails, investigation reports, and any records reflecting whether the City enforced, ignored, or inconsistently enforced nuisance laws at these locations.

## 6. Pattern-and-Practice Evidence

**Pursuant to Rule 26(b)(1)'s broad relevance standard, Plaintiff will request:**

- **prior lawsuits against Pasadena**
- **settlements or indemnity payments**
- **citizen complaints**
- **officer misconduct histories**
- **excessive-force incidents**
- **evidence supporting deliberate indifference**
- **use-of-force histories**
- **discipline failures**
- **retention of officers involved in shootings**
- **policymaker decisions affecting training or enforcement**

**This includes records relevant to Hernandez v. Pasadena, Schenk v. City of Pasadena, Aviles v. Saldivar, and other use-of-force or misconduct cases involving Officer Rigoberto R. Saldivar, demonstrating Pasadena's failure to supervise or discipline officers.**

**7. Damages Material**

**Plaintiff will request documents relating to:**

- **emotional distress**
- **constitutional injury**
- **litigation expenses**
- **filing fees**
- **transportation costs**
- **postage, printing, scanning**
- **lost time or resources caused by Defendant's conduct · expert costs**

**8. Depositions**

**Plaintiff reserves the right to depose:**

- **all involved officers**
- **supervisors**
- **Internal Affairs personnel**
- **code enforcement staff**
- **municipal court employees**
- **Pasadena policymakers**
- **any individual with relevant authority or knowledge**
- **any person with knowledge of training, supervision, or enforcement practices**

**NOTICE OF INTENT TO COMPEL**

**Plaintiff will promptly move under Fed. R. Civ. P. 37 for an order compelling disclosure should any party refuse to produce discoverable evidence.**

**IX. SIGNATURE**

Respectfully submitted,

Erik Salvador Garcia, Sui Juris / All Rights Reserved

1404 Starkey Street

Pasadena, TX 77503

Pro Se Plaintiff

Date: *December 12, 2025*